Mr. McVean, whenever you're ready. May it please the court, good morning, my name is John McVean, I represent Gregory McKown. Your honors, the issue in this case is whether the executive branch can commit Mr. McKown, who as we stand here today is a free and presumptively innocent man, to either a mental hospital or a federal prison for an evaluation. And whether the government can do that without making any showing whatsoever that this commitment will meaningfully improve the accuracy of the evaluation that it seeks to undertake. Your honors, we do not dispute that the United States can and has to evaluate and attempt to restore Mr. McKown. That's not the issue in this case. This case is about involuntary commitment. And whether at some point before involuntarily committing a person, there must be a substantive showing that the commitment will be at the very least helpful. In this case, there's been no such showing. So the And it violates the Constitution in two ways, your honors. First, it violates substantive due process. This is so important. There is no Supreme Court case, and I'll talk about Jackson v. Indiana in a second, but there is absolutely no Supreme Court case where the Supreme Court has ever said that a person can be involuntarily committed without some to further an important government interest. There's no dispute here. The government has an important interest in prosecuting Mr. McKown. But that's not enough. The second reason, your honors, is even if it were enough, even if we could conceive that in this case it might be helpful, Mr. McKown has been given no procedure to investigate that and to challenge that determination. So in this case, we have to start with Jackson v. Indiana. The Supreme Court decided that case in 1972. And what Jackson held, the Supreme Court actually said we hold so that no one could miss the holding in that case. The Supreme Court said we hold that a person charged with a crime who is committed solely on account of his incapacity, like Mr. McKown, cannot be held more than a reasonable period of time. They said reasonable period of time, and the government emphasizes that. But they also said the commitment had to be necessary to determine whether there's a substantial probability that he will attain capacity in the foreseeable future. Now, when the Supreme Court used that word necessary, they put it in there for a reason. They could have written that opinion without using the word necessary. And to exclude that word necessary and say that the government can commit a person if they think it would be a nice idea or if they have any rational basis to believe that it would be helpful, number one, it disregards the holding of Jackson, the part of Jackson that the Supreme Court characterizes as holding. But number two, it violates several other Supreme Court precedents, including every single precedent that we have been able to establish on involuntary commitment. It violates Fuchsia v. Louisiana, where the Supreme Court said that an insanity acquittee must be released when it's determined either that he's no longer mentally ill or that he's not a danger. But this is a short-term confinement in order to assure that the trial is a fair one and that there's a correct diagnosis of the mental health issue. So the necessity is to guarantee a fair trial and have a correct diagnosis. And it's different than Indiana in that it's a very short term. So can you answer that? Two responses to that. First, Your Honor, in Teague v. Quarterman, this court held there is no de minimis exception to due process deprivations. Now, that case dealt with good incarceration periods of potentially weeks or even less. And this court said, no, before you take someone's good time credits, there's no de minimis exception. You need to give them due process. And we cite the Teague case in our reply brief. So that argument that, well, this is kind of a minor deprivation, number one, it's not. It's not a minor deprivation. This is what the Supreme Court called in Vitek v. Jones a massive curtailment of liberty. And the Supreme Court has never said that you can involuntarily commit someone without examining whether it's necessary if it's for a short period of time. And, in fact, that's the opposite of what this court said in Teague. Why isn't it necessary in order to determine the mental health situation and determine whether it's appropriate to proceed with trial? Well, Your Honor, the main reason it's not necessary is because specific to this case, we had two experts in the trial court testify that they were able to perform the evaluation, the same evaluation for which the government now wants to commit Mr. McCown on an outpatient basis. Also, the laws of several states would permit this evaluation to be conducted on outpatient basis, which suggests that commitment is not necessary in every single case. Finally, we've cited a study in which 589 Texas defendants were examined. They were all found incompetent to stand trial. They were all attempted to be restored on an outpatient basis. Seventy-five percent of them were restored without being committed. Now that should tell the court that there are many cases where you can accomplish the government's goal in this case, the government's goal for this evaluation, without committing a person. There's absolutely nothing, not only is there nothing in the record, there's nothing in the science, there's nothing in the literature, there's literally nothing to support a determination that this cannot be done on an outpatient basis. On the other, yes, Your Honor? So this has been, it's been over a year now? It's been two years since he's been, almost two years, Your Honor. Almost two years, but he's, it's been stayed, right? And so nothing's happening and he's just living at home? That's right, Your Honor. He's living at home. And he's not had any further evaluation in that process? He goes to mental health treatment, court-ordered mental health treatment. But not for this purpose, right? Exactly right. Exactly right. Those experts haven't come in and done and mooted this case out or anything like that? As far as I know, no, Your Honor. Certainly when we get back to the district court, he hasn't even determined whether he's still incompetent. He's not been even evaluated for his competence for over a year now. So it may be possible that we'll go back, he'll get evaluated again, and someone will decide that he's competent. And, Your Honor, that kind of goes to the point of this case, you know, what the statute requires. The statute also requires that the commitment be necessary to determine whether the person can be restored. So, in this case, if the Bureau of Prisons is following the statute, Mr. McCown could go off to wherever they send him. And this is an important aspect of the government's argument as well. The government says once he's committed to our custody, he has no rights at all about where we send him, what we do with him, whether he goes to a prison or a hospital. We decide all of that. He has no process and no rights, regardless of what our needs are. So he could go to the Bureau of Prisons, which is where he'll go. He could interview with someone for two hours, which is what has already happened, and that person could reach a conclusion, which two experts have already done. Once that happens, Your Honors, he's supposed to be either released or we're supposed to think about whether an additional period is necessary. Now, the fact that under the statute that could happen in two hours should give this Court pause about whether we need to commit him at all. And that, Your Honors, this really brings me to my procedural due process point, because there certainly is a substantive right not to be committed for no reason. I don't even understand the government to argue that it could commit Mr. McCown for no reason merely because he's incompetent. Taking for granted that that right exists, it's a right of the highest order. And under the Matthews v. Eldredge factors, process needs to be provided with respect to that right, because there is a significant chance that someone could be committed when, in fact, that necessary piece was absent. And the study that we've cited from Texas demonstrates that. That's 589 people, 75 percent of whom would have unnecessarily gone to a mental institution under the regime that the government believes applies here. Counsel, can you remind us, is this just that we need to strike down the statute argument as unconstitutional, or are you saying that as it's applied to your client, there's some particular infirmity? This is an as-applied challenge. And the reason is because Mr. McCown is on pretrial release. Certainly, this whole analysis would be much different for a person who, because they were dangerous or because they were a flight risk, had already been committed to the Attorney General's custody. So this really is an as-applied challenge, and a narrow one. There have been some circuit court cases discussing this type of circumstance, but I think probably fewer than 20 cases have been cited in the 30-plus years that this mandatory commitment regime has been in effect. So this doesn't seem to come up often. But when it does come up, the effect of the statute is to deprive a person of liberty unnecessarily, or certainly it can be. Now, is there some evidence in the record, though, that he is dangerous, threatening some Social Security employee? I mean, I don't know how that cuts with him being allowed to live at home, and you might, but is that... Well, Your Honor, a detention hearing was held under the Bail Reform Act, and the magistrate judge determined that he was not a danger. And that has never been challenged or appealed. So, and... You have to assume he's not a danger, even if it says that he threatened a Social Security person, allegedly. Absolutely, and in fact, there's no argument in this case that the government seeks to advance for the government holding him, and for Judge Hoyt's order committing him, was for this evaluation. Your Honor, I think it's also important to think about the case of Vitek v. Jones in terms of our procedural due process arguments. In that case, the Supreme Court held that an inmate, a sentenced inmate in federal prison was entitled to procedural due process before being committed to a mental hospital. And one of the important things that the court held constitutionally had to be considered in that context was whether the prison could provide mental, adequate mental health care. So even for a person who is literally in prison, which obviously Mr. McCown is free right now, but even for a person who's in prison, that additional commitment requires additional process related to the necessity of doing it. And, Your Honors, I also want to talk about this court's opinion in Inree Newchurch. In that case, this court held that before a district court could commit an inmate, or excuse me, a defendant, to evaluate an insanity defense, the district court had to consider whether or not there were available local alternatives. And in fact, consider the deprivation of liberty that would be worked upon the person. Now, the government attempts to distinguish Newchurch by saying, well, in this case, the district court really doesn't have a decision to make about whether to commit the person. The statute requires the district court to give the person, the custody of the person, to the Bureau of Prisons. But, Your Honors, certainly the statute itself arguably allows the Bureau of Prisons to rehabilitate the person and to evaluate them on an outpatient basis. And to the extent the statute gives that discretion to the Bureau to take away a person's liberty or to let them remain free, that is a very important agency decision. One might say the most important agency decision that an agency could ever make. And the Bureau needs to provide some type of process for it to establish that it needs to commit the person. So is it the Bureau deciding or is it Judge Hoyt deciding? Your Honor, that's a decision that we have to make in this case. But really, under the statute, it goes to the Bureau. Under the statute, the Bureau makes the initial decision, and certainly we think that would be covered by reviewing the district court. Does the Bureau get to decide, oh, we can do this in 48 hours because it only takes two hours for the exam, and so we can get him there one day and do the thing the next day and get him processed? Do they get to decide the duration in every issue, or is that up to the district court? So I think CEL provides us, the United States v. CEL, which dealt with the government's ability to medicate somebody in order to restore them, gives us a really good roadmap for this. In CEL, there was an administrative hearing where the BOP said, these are the medicines we need to give this person and this is why. And then they said, here, district court, this is what we want to do, what do you think? And the district court says, okay, or that's not going to work. The exact same process could be applied here. But is it? No. There's no process? There's no process. No, there is no process. And if the district court just says, here, BOP, you just take the person and do whatever? That's exactly right, Your Honor. And, in fact, we've cited in our brief – They don't have to come back and say we're holding the whole 60 days or what? Is it 60 or not? It's four months. Four months. Okay, I'm sorry. Four months. No. They don't have to say we're holding the whole time because we couldn't get the right experts in and we're still evaluating and arguing about it? No. No, Your Honor. That's the problem. And we've cited in our brief the Bureau of Prisons regulations that tell us exactly what's going to happen. The Bureau of Prisons regulations define custody for purpose – oh, I see I'm out of time. You can finish your sentence, Your Honor. The Bureau of Prisons regulations define custody for these purposes to mean a BOP facility, either a mental hospital or a federal prison. All right. Thank you. I think you've saved time for rebuttal. Mr. Reed. Good morning, Your Honors. John Reed on behalf of the United States. May it please the Court. Your Honors, the district court's order in this case committing Mr. McCown to the custody of the Attorney General for hospitalization and further evaluation for a limited time period should be affirmed. Every federal circuit – there are six – six federal circuits have addressed the exact arguments or the nearly exact arguments that Mr. McCown is making, and they have all rejected them. This Court has said many times that it is cheery to create a circuit split. Mr. McCown has not even acknowledged in his briefing the numerous circuit court decisions and district court decisions that have ruled against his position. Have the other cases dealt with the issue that there would be some court supervision in normally, you know, about the medication issue, that there's a whole process for that and there's no process here? There is a whole process. And, no, that's incorrect, Your Honor. There is process. The statute requires that the defendant first be determined to be incompetent after a full evidentiary hearing. At that point, he – the district court has no discretion. He must commit him to the custody of the Attorney General. Statute says for hospitalization. The time period cannot exceed four months unless there are district court findings. You have to go back to the district court to extend that time period to make – But he fought some four months. Whereas, you know, if you were going to medicate somebody, you have to go back each time you're going to do some change in the medication. Mr. McCown cannot be forcibly medicated without further process. That's the requirement itself. But that's what I'm saying. We have a lot of process for medication. Yes, that's correct. But not any process for keeping someone four months versus four days. Because the Supreme Court said in Jackson that the State, once a defendant is determined to be incompetent, the State may hold that person for further evaluation for a reasonable period of time, as is necessary to determine restorability. The necessary language modifies not the commitment itself, but the restorability, the reasonable time period. So, yes, it's true. It could be, under this statute, the cap is four months. It could be less. It could be more. We don't know how long it's going to take to evaluate Mr. McCown. But why is it that they get complete discretion to determine what is the reasonable time period? It's saying that anything under four months is reasonable automatically without looking specifically for each person what a reasonable time period is. Not that four months is necessarily reasonable. It's going to depend on each individual case. But they can't challenge that, can they? I mean, that's what we're here for. Well, that's what he's challenging here. Right. But he can't come in and say you only needed two weeks in my client's situation because it's a real easy case that he's assumed someone else is completely comatose almost, you know, catatonic or something. Right. So Congress chose to delegate to the Attorney General the authority to determine the restorability issue. And we are relying on the expertise of the medical experts in this case, those from the BOP. But the court then has no supervisory authority. The BOP can do whatever it wants as long as it doesn't exceed four months. Is that right? The BOP's program statements say that he's going to be evaluated in a no, the statute requires that he be placed in a suitable facility. And a suitable facility is one that can provide the necessary care and treatment. Right. And the program statements that Mr. McCown has cited indicate that a defendant who is referred under this statute, 4142D, is going to be referred not to a prison for placement in the general population. He's going to be referred to a medical referral center where the courts, the eighth, the first, the ninth circuits have recognized that the BOP has the expertise to determine the restorability issue. Right. And does the court have supervisory authority over that? So could he come back and say, you picked this placement for my client, it's a completely unsuitable placement, BOP, you're wrong, and, District Court, please give some relief. Could he have, does he have any kind of, does the court retain supervisory authority or not? No. And importantly, that's because the courts lack the expertise, the medical expertise necessary to determine this. The Tenth Circuit in Anderson said that that kind of an argument requiring an additional hearing to determine the suitability of additional treatment or additional hospitalization turns the statute on its head. So it gives all the power to the BOP, and they get to determine whether four months is appropriate or one day is appropriate and where the placement is and whether outpatient or inpatient. All the discretion is with the BOP, and there's no court supervisory authority. Is that correct? Well, essentially, yes, but there's not, there's nothing nefarious about this statute. Just ask them what the constitution of the statute is. Right. I understand. And every Federal Circuit court of appeals to address this statute has said that that is permissible because Jackson says that the State may hold the defendant for a reasonable period of time, but not to exceed a reasonable period of time. The Supreme Court didn't even give a cap on the length of time that he could be held. And subsequently, the Court has referred to, for example, in the Fouché case, it characterized the Jackson holding as stating that a State is, quote, entitled to hold the defendant for long enough to determine the restorability. And any longer than that, he's got to be subject to additional procedural procedures for civil commitment and so forth. But it doesn't matter whether a court believes that four months is too long. Medical experts are going to determine whether or not four months is too long. Could he bring in medical experts to argue that it's too long and go somewhere? Where would he have remedy? He does not. There's no place he can go. No. But, and again, every circuit court of appeals has held that this is a permissible scheme because the four-month cap is what protects the defendant. I think what Mr. McCown is sort of assuming is that we're going to hold him indefinitely or for an extended period of time that is unreasonable. But four months is a long time. That's a significant deprivation of liberty, isn't it? It's not de minimis. I'm not arguing that it's de minimis, but it can be extended even beyond that. The Supreme Court in Jones, which is cited in my brief, in footnote 13, the Supreme Court said that it has frequently recognized the uncertainties and fallibility of mental health diagnoses and the field of psychiatry. And the lesson to be drawn from that, according to the Supreme Court, is that courts should pay particular deference to the reasonable choices that Congress has made. And the court may use common sense when assessing that. Jones specifically rejected the necessity of empirical evidence to support Congress's choice as long as it appears to be reasonable. Okay, so in this case we're talking an as-applied challenge. Yes. We know in this case that the person has been living on his own for almost two years, and we don't have a whole series of he's had these episodes and been arrested and they had to call the hospital. We have no history of him. He's been, as far as I can tell on the record, in that time. That's correct. But two responses, Your Honor. Firstly, the opinion of Dr. Harris in testimony and his written report said that Mr. McCown worries him when he was asked about his potential for dangerousness. So the fact that he has not committed any violent acts during this time period does not necessarily mean he's not dangerous. But didn't the magistrate judge make a finding that he was not dangerous in order to allow him to live on his own? And allowed him to live on his own. That's correct. Wasn't that binding on us in this procedure? You're not challenging us. I'm not. What I'm suggesting, and I'm not suggesting that he needs to be held because he's a danger, but what I'm suggesting is that there's always the potential threat. The reason that he made these threats was because he perceived Social Security as denying him a benefit, which he was then subsequently granted. So the trigger for his threats has been removed. But Dr. Harris said that he's emotionally volatile and he could go off at any time. I'm not suggesting he will or that he has, but we don't know that. And so what the courts have recognized is that under 4241D, we've got the opinions of Dr. Harris and Dr. Scarano. They contradict each other. Or they conflict. I'm sorry. They conflict as to whether or not he is restorable in the immediate foreseeable future. So on an as-applied basis, we've got conflicting evidence. So it's reasonable to require further hospitalization for a more careful and thorough evaluation, which is what the First, the Eighth, and the Ninth Circuits have all held to be a reasonable justification for this statutory scheme. Okay. In a hospitalized setting, you're going to have the ability to observe Mr. McCown and any defendant under this statute on a 24-hour basis. You're going to be able to observe him in a controlled environment. You're going to be able to observe his interaction not with just one doctor who's conducting an hour-long evaluation, but with other staff members, nurses, correctional officers, facility staff, et cetera. And courts have recognized the goal here is to provide a more complete picture of the defendant's situation and his diagnosis and prognosis. This promotes not just the government's interest in bringing prosecutions, but it inures to the benefits of the defendant in ensuring he's not tried if he is incompetent and society's interest in making sure that trials are fair. And so Congress's scheme here balances very carefully the competing interests. As I said, you have this initial hearing to determine the competency. You've got a subsequent evaluative period during which the period cannot be extended. The cap is what protects the defendant, but it cannot be extended without additional procedures. It cannot be — we cannot force medication upon the defendant without additional procedures. And then there's going to be further hearings after the evaluation period if he's found to be competent and restored, goes back to the district court for further hearings. If he's found incapable of being restored, it goes back to the district court for further hearings. So to suggest that the district court has absolutely no role here is not correct. There is an overarching scheme, and we're looking at a very narrow portion of it. And the courts have said that this is constitutional. As far as the other Supreme Court cases that Mr. McCown relies on in his brief, almost all of them involve indefinite confinement, Fouchier, Addington, Jones. The only ones that did not are Selle, which involves forced medication. As I've argued in my brief, that is a much more invasive intrusion upon a person. The Supreme Court was concerned there with potentially grave side effects of the psychotropic medication that could interfere with the fairness of the trial and actually cause death. And so it makes sense that we're going to have additional procedures. And then the other one that does not involve indefinite confinement is Salerno, and that's bail, but that serves different interests. And Salerno even recognized that there are times, as I argue here, this is one of those times where the public's interest or the societal interest outweighs the individual interest in liberty. The fact that other states may permit outpatient evaluation does not establish the constitutional floor. As we all know, the federal constitution is a floor, and so the fundamental question here is, is it reasonable for Congress to require additional hospitalization and evaluation after a defendant has been found to be incompetent after a full hearing? And I submit to you that that is a reasonable choice, as six federal circuits have held. The Texas study that Mr. McCown cites, it's true, they were able to restore someone to competency on an outpatient basis, but read the end of that study. They also recommend further study to confirm whether or not inpatient versus outpatient should be the first choice. And, again, the fact that some states may permit it doesn't mean that Congress exceeded its authority under the due process clause. The necessity language, Mr. McCown relies on the argument that it's not necessary to confine him because these experts have given their opinions. The experts' opinions conflict. But also, as the Ninth Circuit held in Strong, this argument that it's not necessary presumes an answer to the question of why we're submitting him for evaluation in the first place. You should not do that. The Vitek case is also distinguishable. That's another case where the potential for the commitment in the state mental facility was indefinite. In Vitek, a state prisoner was being transferred from prison after conviction to a mental hospital. He challenged whether or not he was mentally ill. We don't have that. There's no dispute here that Mr. McCown is incompetent. But the prisoner in Vitek said, I'm not mentally ill and I should not be going to a mental health facility. And that decision was made not by the district court after a hearing, but by a doctor with no procedures. And then the Supreme Court was animated in Vitek by two other concerns, one being the mandatory behavioral modification treatment that went along with the transfer and the stigma associated with being transferred. I've argued in my brief that neither of those conditions are present here. We cannot force medication upon Mr. McCown because of the cell decision, which requires additional process and a hearing. And I've argued that any additional stigma here is not appreciable after he's already been found to be incompetent after a full hearing. Newchurch is distinguishable as well. The Seventh Circuit distinguished Newchurch in the Shawar decision. Newchurch involved a different statutory provision, one that this court took pains to explain involved permissive language, not mandatory language. And the legislative history of that particular provision in Newchurch expressed a congressional, it was Congress, a legislative preference for outpatient treatment. Here we don't have that. We have the mandatory language. But this court in Newchurch said because the statute does not require the hospitalization, we are not expressing an opinion as to whether Congress could constitutionally require it. It's just that the statute doesn't require it, and in order to comply with due process additional procedures are necessary. Did the district court have ordered that it be outpatient? No. The district court, y'all would be appealing that if the district court said I heard from the experts, I agree that the statute applies, he needs the evaluation, but it needs to be outpatient based upon the experts I heard. The same situation arose in the Eighth Circuit and the First Circuit, and they said the same thing. It does not matter that the hospitalization, the evidence suggests that the hospitalization would be not necessary, because we don't know that until it occurs. And, again, the- But the district court could make a decision about whether it would be necessary based upon the experts he heard at this hearing. No. Under the statutory scheme, the district court has no discretion but to commit him to- And then they have all the discretion. Yes. But discretion cabined by the statutory requirement that he be placed in a suitable facility for a time period not to exceed four months. But no method would challenge that. He cannot challenge that. So how does it cabined at all? They have the language of the statute, but there's no remedy in case they have done an unsuitable facility. Because Congress made the legislative choice to require hospitalization, hospitalization plain meaning being inpatient evaluation. And all courts to address the question have recognized that inpatient hospitalization is a most logical and effective way to- Are you saying that there would be no remedy anywhere in any court instead of putting him in a proper hospital? That would be an extreme situation, and I don't know the answer to that question. Some circuits, I think one of the circuits did question, for example, whether or not it would go that far. But as an as-applied basis, we are not- Since Mr. McCown has said this is an as-applied challenge, you don't even have to decide that, Your Honor. I see my time is up. Thank you, Mr. Reed. We ask that the judgment be affirmed. Thank you. And for Rebo? I think Judge Elrod has identified the serious problem with this statute. If this discretion has been committed to the Bureau, as the government suggests that it has, to put a person wherever they want and to restore them in whatever manner it wants, certainly some pre-deprivation process must be provided. And we know that pre-deprivation must be provided from a couple of places. The first is the Supreme Court said in Zinnerman v. Birch that pre-deprivation process is required, if possible, before involuntary commitment. That's the holding of that case. Now, the government apparently construes this statute to require commitment in all cases. I don't know that the court needs to read the statute that way. In fact, the Ninth Circuit in an unpublished decision, I believe last week or the week before in Nino, said we're actually not deciding whether the Bureau could restore someone or evaluate them on an outpatient basis. We certainly believe that the option at some point in the process to consider outpatient alternatives is necessary to a constitutional construction of this statute because contrary to the government's argument, we're not here on rational basis review today. And I hope that the court will read the Georgia Supreme Court's opinion in Carr v. State because that opinion very elegantly discusses the Shawar case and the other circuit cases upon which the government is relying upon. That was a different statute anyway, though, wasn't it? The Georgia statute was different, but the holding of the case is really that mandatory commitment for the purposes of mental health evaluation of an incompetent defendant violates substance of due process. That's the holding of the Carr case. And the way that the court got there was in analyzing these federal cases that the government talks about. It was very simple. They just said why? How? But that is the outlier case among all of the others. I guess it depends what you mean by outlier, Your Honor. I would – it is one – it's the only one that says that, and there are others that say the opposite. But in terms of its attention and its analysis of the Supreme Court constitutional cases and of these circuit court constitutional cases, Carr is very persuasive. One of the things that it says is why would we conclude? What is there in the record or in our – in the literature or anywhere to enable us to conclude that in all cases sending someone to a mental hospital is going to meaningfully aid their evaluation? And what is there in this case to reach such a conclusion? Your Honor, the government says, well, Congress could have reasonably decided this. How? And in any event, it's been 35 years since Congress passed this law, and things may have changed. Certainly the testimony of the experts in this case, the changes in the laws throughout the country, and the studies that have been cited to the court suggest that things have changed significantly and that there is good reason to believe that it's possible for the government to accomplish its objective of evaluating and restoring Mr. McCown without the massive curtailment of liberty. I keep saying that. Those aren't my words. That's what the Supreme Court called this, the massive curtailment of liberty that accompanies involuntary mental health commitment. Now, the government says this really isn't that bad of a curtailment of liberty because you've already been found to be incompetent. Going to a mental hospital is hugely different than being found, as Mr. McCown was, unable to adequately assist your lawyer in a criminal case. That's his mental defect. It doesn't mean that he's dangerous. It doesn't mean that he's troublesome. It doesn't mean that he can't get this case to trial.  And there's been nothing in this case to support the conclusion that he should go to the hospital for that. I want to make another point. The government talked about balancing the public's interest in bringing a person to trial versus the individual interest. That absolutely needs to happen in this case as a matter of constitutional law. We're not here on a rational basis case, Your Honor. This is really a strict scrutiny case. There needs to be tailoring of what the government is trying to do to the important objective that it has. There needs to be some tailoring. That's all that we're asking for is some tailoring for someone at some stage of this process before committing Mr. McCown to a mental hospital to say, yes, this is the most effective way to do this and for some process related to that. We'd ask you to reverse the decision, court. Thank you. Thank you, Mr. McCown. The case is under submission.